2015 IL App (2d) 131029
No. 2-13-1029
Opinion filed December 16, 2015

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Winnebago County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 03-CF-2188 |
| ALLEN R. JOHNSON, | ) ) ) | Honorable Randy Wilt, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE SCHOSTOK delivered the judgment of the court, with opinion. Justices Jorgensen and Spence concurred in the judgment and opinion.

**OPINION**

¶ 1    The defendant, Allen Johnson, appeals from the second-stage dismissal of his postconviction petition. The defendant argues that the trial court erred in finding that his petition was untimely and that it failed to make a substantial showing of a constitutional violation. The defendant also argues that further second-stage proceedings are necessary because postconviction counsel did not satisfy the requirements of Illinois Supreme Court Rule 651(c) (eff. Feb. 6, 2013). We affirm.

¶ 2                                          BACKGROUND

¶ 3    In May 2003, the body of Mary Barnett (the victim) was found in a wooded area behind a cemetery in Rockford. An autopsy indicated that the victim's death was caused by multiple blows to the head. In August 2003, the defendant was charged with two alternate counts of first-

degree murder (720 ILCS 5/9-1(a)(1), (a)(3) (West 2002)). The indictment alleged that the defendant either (1) struck the victim with a blunt object, knowingly creating a strong probability of great bodily harm or death, or (2) killed the victim in the course of a felony, namely criminal sexual assault. In March 2005, following a jury trial, the defendant was found guilty of first-degree murder as charged in count I, and not guilty of count II. The trial court denied the defendant's posttrial motion and sentenced the defendant to 50 years' imprisonment.

¶ 4       On direct appeal, the defendant argued that the trial court erred in instructing the jury that they could consider evidence of the defendant's participation in other crimes for four purposes: identification, intent, motive, and design, rather than for only two: identification and intent. *People v. Johnson*, No. 2-05-0507 (2007) (unpublished order under Supreme Court Rule 23). This court held that the trial court erred in instructing the jury that they could consider the evidence of other offenses for the purpose of "design." *Id.* at 11. Nonetheless, we upheld the defendant's conviction because the error did not result in prejudice. *Id.* The defendant did not file a petition for rehearing, a petition for leave to appeal to the Illinois Supreme Court, or a petition for a writ of *certiorari* from the United States Supreme Court.

¶ 5       On August 25, 2008, the defendant filed a *pro se* postconviction petition. The defendant acknowledged that the petition was untimely, but asserted that his tardiness was not due to his culpable negligence. The defendant asserted claims based on ineffective assistance of trial counsel, ineffective assistance of appellate counsel, false testimony, and a discovery violation. Attached to the petition was an affidavit from Christopher Askew. Askew, a fellow prison inmate, stated that he helped the defendant prepare the postconviction petition. Although they had discussed the postconviction petition in January 2008, the defendant was not able to get the record of his case from the law library until March 19, 2008. After that date, there was a series of prison lockdowns that prevented Askew from speaking with the defendant and reaching the

law library. Attached to Askew's affidavit was a memo from a prison counselor verifying that the prison was on lockdown from March 25 through April 18, 2008. Additionally, there were one-day lockdowns on April 24 and May 15, 2008. The counselor noted that he would "try to get the other dates requested."

¶ 6     On November 19, 2008, the trial court summarily dismissed the petition because it was untimely. On April 30, 2010, this court reversed the summary dismissal of the petition and remanded the cause to the trial court for second-stage proceedings. *People v. Johnson*, No. 2-09-0350 (2010) (unpublished order under Supreme Court Rule 23). This court noted that the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2008)) did not authorize a summary dismissal of a postconviction petition on the basis that it was untimely. *Johnson*, slip order at 2 (citing *People v. Boclair*, 202 Ill. 2d 89, 99 (2002)).

¶ 7     On remand, counsel was appointed to represent the defendant. On May 2, 2011, the defendant filed a motion to allow the late filing of his postconviction petition. The defendant asserted that his petition was due on March 11, 2008. The defendant alleged that in January 2008 he approached another inmate for assistance in filing a postconviction petition. However, he was unable to access his transcripts in the prison law library until March 19, 2008, and then prison lockdowns prevented the completion of his petition until July 22, 2008. The defendant argued that the late filing of his petition was due not to his culpable negligence, but, rather, to difficulty accessing his record and to prison lockdowns.

¶ 8     The State did not respond in writing to the defendant's motion for late filing. At a May 2, 2011, hearing, before Judge Steven Vecchio, the State argued that the defendant was culpably negligent because he did not need to wait for access to his record to assert the gist of a constitutional claim. The trial court stated that it would hold an evidentiary hearing on the issue of timeliness.

¶ 9    On June 8, 2011, the evidentiary hearing took place. At the start of the hearing, the State acknowledged that the hearing was to address the timeliness issue, but stated that it was reserving its right to file a motion to dismiss addressing other issues. Postconviction counsel stated that he had filed a Rule 651(c) certificate. He had spoken with the defendant and they agreed that all the contentions were properly raised in the defendant's *pro se* petition and there was no need to amend it. The motion for late filing was essentially a supplement that addressed the timeliness issue.

¶ 10    The defendant testified that, at some point after this court affirmed on his direct appeal, he received some papers in the mail from this court concerning postconviction petitions. He did not know what to do. In January 2008, another inmate approached him and offered to help him file a postconviction petition. However, the prison was essentially on lockdown from January 2008 to April 2008. Due to the lockdowns, he was unable to get his record from the law library and complete the postconviction petition on time. On cross-examination, the defendant acknowledged that there were many days that the prison was not on lockdown. He knew that there was a deadline for filing a postconviction petition but he did not know the deadline.

¶ 11    Following argument, the trial court granted the defendant's motion for late filing. The trial court found that the defendant did not know anything about postconviction petitions and had no other choice but to rely on a "jailhouse lawyer." The trial court held that, because the defendant did not know the deadline for filing, he was not culpably negligent in failing to meet that deadline. The trial court then addressed the defendant and asked if he was comfortable standing on the allegations in his *pro se* petition. The defendant consulted with postconviction counsel privately. Thereafter, the defendant stated that he wished to stand on his petition. The trial court accepted the Rule 651(c) certificate.

¶ 12    On January 27, 2012, the case was reassigned to Judge Randy Wilt. On October 26, 2012, the State filed a motion to dismiss the defendant's postconviction petition. In the motion, the State acknowledged that the timeliness issue had already been resolved but included argument on that issue so that it was "not waived for any possible appeal or future proceeding." As to the merits, the State argued that the defendant had failed to make a substantial showing of a constitutional violation.

¶ 13    On July 19, 2013, the trial court heard oral argument on the State's motion to dismiss. The State noted that the timeliness issue was resolved by Judge Vecchio and explained that it had included argument on that issue in the motion to dismiss only so that the issue would be preserved for possible appeal. Judge Wilt agreed that, since Judge Vecchio had made a determination on the timeliness issue, he was "not really in a position to overturn that decision." Thereafter, the parties presented arguments on the motion to dismiss. As agreed, there was no further argument on the timeliness of the petition.

¶ 14    On September 10, 2013, in a written order, the trial court granted the State's motion to dismiss. The trial court found that the prior order as to timeliness was not dispositive, because the issue had not been briefed or properly litigated and Judge Vecchio had not made a finding as to culpable negligence. The trial court found that, "based upon a review of the pleadings and after considering arguments of counsel," the petition was untimely and subject to dismissal on that basis. Noting that the defendant did not file a petition for leave to appeal, or a petition for a writ of *certiorari*, the trial court found that the petition was due six months after the 90-day period in which the defendant could have filed a *certiorari* petition. This date was February 7, 2008. The trial court found that there was no explanation as to why the defendant waited until January 2008 before seeking advice regarding the filing of a postconviction petition. The trial court also found that there was no evidence of any prison lockdown that prevented the defendant

from getting his transcripts between January and March 2008. The trial court also addressed the merits of the defendant's claims and found that the defendant had failed to make a substantial showing of a constitutional violation. The trial court found that the postconviction petition should be dismissed for that reason as well. Thereafter, the defendant filed a timely notice of appeal.

¶ 15                                    ANALYSIS

¶ 16     On appeal, the defendant argues that the trial court erred in dismissing his petition at the second stage. Specifically, the defendant argues that the trial court erred in considering the issue of timeliness. Additionally, the defendant argues that, with respect to the merits of certain claims in the petition, postconviction counsel did not satisfy the requirements of Rule 651(c) and the case should be remanded for further second-stage proceedings.

¶ 17     The Act provides a remedy to criminal defendants who have had substantial violations of their constitutional rights during their criminal trials. See *People v. Vernon*, 276 Ill. App. 3d 386, 391 (1995). A postconviction proceeding is not an appeal *per se*, but a collateral attack upon a final judgment. See *People v. Lester*, 261 Ill. App. 3d 1075, 1077 (1994). The trial court must review the petition within 90 days, and may summarily dismiss it if the court finds that it is frivolous or patently without merit. *People v. Pendleton*, 223 Ill. 2d 458, 472 (2006). If the petition is not dismissed during this period, the trial court will docket it for further proceedings. *Id.*

¶ 18     Once a petition reaches the second stage, the defendant bears the burden of making a substantial showing of a constitutional violation. *People v. Coleman*, 206 Ill. 2d 261, 277 (2002). At the second stage, all well-pleaded facts are taken as true unless they are positively rebutted by the trial record. *Pendleton*, 223 Ill. 2d at 473. Mere conclusions cannot serve as the basis for postconviction relief. *People v. Coleman*, 183 Ill. 2d 366, 381 (1998). If a defendant

makes a substantial showing of a constitutional violation, then the petition is advanced to the third stage for an evidentiary hearing. *Id.* We review *de novo* the dismissal of a postconviction petition at the second stage. *People v. Edwards*, 195 Ill. 2d 142, 156 (2001).

¶ 19    The defendant's first contention is that Judge Wilt erred in revisiting the issue of timeliness and dismissing his postconviction petition on that basis. As to whether Judge Wilt erred in ruling on the timeliness of the defendant's petition, we note that the June 8, 2011, order, granting the defendant's motion for late filing, was an interlocutory order that was not immediately appealable. A court has the inherent authority to reconsider and correct its rulings, and this power extends to interlocutory rulings as well as to final judgments. *People v. Mink*, 141 Ill. 2d 163, 171 (1990). As such, a second trial judge has the authority to vacate the first trial judge's order. *Id.* Accordingly, Judge Wilt had the authority to revisit the timeliness issue and reach a different conclusion than Judge Vecchio as to the timeliness of the defendant's petition.

¶ 20    In so ruling, we note that the defendant argues that the State was barred from asking Judge Wilt to review the decision of Judge Vecchio. However, the record demonstrates that the State did not ask Judge Wilt to reconsider Judge Vecchio's determination. Rather, the State indicated that it included the issue in its written motion to dismiss so as to preserve the issue for appeal. Even if the State had asked for reconsideration, that would not have been improper as an interlocutory order can be reviewed, modified, or vacated at any time before final judgment. *Catlett v. Novak*, 116 Ill. 2d 63, 68 (1987). The defendant also argues that, because he believed that the issue of timeliness was settled after Judge Vecchio's ruling, he did not amend his petition on this issue or reargue it before Judge Wilt. As to the first point, before the hearing on the defendant's motion for late filing began, postconviction counsel stated that he filed a Rule 651(c) certificate and that there was no need to amend the petition. He further indicated that the motion for late filing sufficed as to any amendments on the timeliness issue. The defendant's

insinuation that he was somehow prejudiced is thus without merit. As to the second point, the defendant correctly notes that Judge Wilt did not hear further argument on the timeliness issue. Nonetheless, the defendant had a full and fair opportunity to argue the issue before Judge Vecchio.

¶ 21 We must next determine whether Judge Wilt erred in finding that the defendant's postconviction petition was untimely. In addressing the timeliness of the defendant's petition, we find instructive *People v. Wallace*, 406 Ill. App. 3d 172 (2010). In *Wallace*, the defendant, Willon Wallace, pled guilty to home invasion and was sentenced to 36 years' imprisonment. *Id.* at 173. On January 13, 2006, after our supreme court directed this court to reconsider its initial decision, we affirmed Wallace's conviction and sentence. *Id.* Wallace did not file a petition for leave to appeal. In October 2006, Wallace filed a *pro se* postconviction petition as well as a motion for leave to file it late. *Id.* Wallace argued that the late filing was due not to his culpable negligence but to prison law library closures. *Id.* at 174. The State filed a motion to dismiss, which the trial court granted. *Id.*

¶ 22 This court affirmed the dismissal. *Id.* at 178. We noted that the applicable time limits for filing a postconviction petition are the ones in effect when the defendant files his petition. *Id.* at 174. At the time of Wallace's petition, section 122-1(c) of the Act provided that " '[i]f a petition for *certiorari* is not filed, no proceedings under this Article shall be commenced more than [six] months from the date for filing a *certiorari* petition, unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence.' " (Emphasis omitted.) *Id.* at 175 (quoting 725 ILCS 5/122-1(c) (West 2006)). The version of Illinois Supreme Court Rule 315(b) in effect when Wallace filed his petition allowed a defendant 21 days from the entry of judgment on direct appeal to file a petition for leave to appeal, or, if he filed an affidavit of intent within 21 days, he had 35 days from the date of the judgment. *Id.* (citing Ill. S. Ct. R. 315(b) (eff. Aug. 15,

2006)). We noted that, applying either the 21-day or the 35-day period, Wallace's petition for leave to appeal was due in February 2006. *Id.* at 176. Thereafter, the defendant had six months "from the date for filing a certiorari petition" in which to file his postconviction petition. *Id.* We held that "the 'date for filing a certiorari petition' could arguably be interpreted as the date for filing a petition for leave to appeal to the Illinois Supreme Court." *Id.* Accordingly, we held that Wallace's postconviction petition was due in August 2006, which was six months from the time his petition for leave to appeal was due (February 2006). *Id.* Because Wallace did not file his postconviction petition until October 2006, it was untimely. *Id.*

¶ 23    We went on to explain that, even if the phrase "*certiorari* petition" in section 122-1(c) referred only to a petition seeking review from the United States Supreme Court, the result would not change. *Id.* at 177. We noted that, under United States Supreme Court Rule 13, a " 'petition for a writ of certiorari seeking review of a judgment of a lower state court that is subject to discretionary review by the state court of last resort is timely when it is filed with the Clerk *within 90 days after entry of the order denying discretionary review*.' (Emphasis added.) Sup. Ct. R. 13." *Id.* In other words, if a petition for leave to appeal to the state supreme court is not filed, one cannot file a petition for a writ of *certiorari* from the United States Supreme Court. We noted, therefore, that, because Wallace did not file a petition for leave to appeal to the Illinois Supreme Court, he did not have an additional 90 days in which to appeal to the United States Supreme Court. *Id.* Thus, his petition was still due in August 2006. *Id.*

¶ 24    In this case, as in *Wallace*, the defendant filed a direct appeal but did not file a petition for leave to appeal to the Illinois Supreme Court or a petition for a writ of *certiorari* from the United States Supreme Court. When he filed his *pro se* postconviction petition, the same version of section 122-1(c) was in effect as was in effect in *Wallace*. However, the version of Rule 315(b) in effect at the time allowed the defendant 35 days from the entry of judgment to file a

petition for leave to appeal. Accordingly, based on the reasoning in *Wallace* and the applicable time limits when he filed his postconviction petition, the defendant had 35 days after the judgment on direct appeal to file a petition for leave to appeal and six months from that point to file his postconviction petition. Because we issued our determination on direct appeal on May 7, 2007, the defendant's petition for leave to appeal was due on June 11, 2007, and his postconviction petition was thus due on December 11, 2007. As he did not file it until August 2008, it was untimely. *Id.*

¶ 25    In so ruling, we note that the defendant urges us to follow the reasoning in *People v. Robinson*, 2015 IL App (4th) 130815. In *Robinson*, the court addressed the same portion of section 122-1(c) of the Act, which states that, "[i]f a petition for certiorari is not filed, no proceedings under this Article shall be commenced more than [six] months from the date for filing a certiorari petition, unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence." 725 ILCS 5/122-1(c) (West 2008). The *Robinson* court rejected this court's determination in *Wallace* that the date for filing a *certiorari* petition in section 122-1(c) of the Act could be interpreted as the date for filing a petition for leave to appeal to the Illinois Supreme Court (*Robinson*, 2015 IL App (4th) 130815, ¶ 22) and held that it referred exclusively to a petition to the United States Supreme Court for a writ of *certiorari* (*id.* ¶ 28). The *Robinson* court held that, if a defendant files no petition for leave to appeal and obtains no order denying discretionary review, then the 90-day period for filing a *certiorari* petition under Rule 13 (Sup. Ct. R. 13) does not begin to run. *Robinson*, 2015 IL App (4th) 130815, ¶ 31. The *Robinson* court further reasoned that, under those circumstances, section 122-1(c) of the Act leads to a procedural "cul-de-sac." *Id.* Specifically, if the period for filing a *certiorari* petition does not begin to run, "there would be no deadline for filing a *certiorari*

petition, and without a deadline for filing a *certiorari* petition, there would be no deadline for filing a postconviction petition." *Id.* ¶ 36.

¶ 26    The defendant argues that, based on the reasoning in *Robinson*, his *pro se* postconviction petition was not untimely, because he never filed a petition for leave to appeal to the Illinois Supreme Court and, therefore, the date for filing a *certiorari* petition did not begin to run. *Id.* Accordingly, because there was no deadline for filing a *certiorari* petition, there was no deadline for filing his postconviction petition. *Id.*   However, this court is not bound to follow the decisions of appellate courts in other districts. *People v. Aldridge*, 219 Ill. App. 3d 520, 523 (1991).   Further, the interpretation in *Robinson* violates the purpose of the statute, which is clearly to provide deadlines for the filing of a postconviction petition.  Under the interpretation in *Robinson*, a defendant could potentially file a postconviction petition 20 years or more after his conviction.  It is well settled that courts should avoid statutory interpretations that lead to absurd results. *In re D.D.*, 196 Ill. 2d 405, 418-19 (2001).  As stated by our supreme court:

> "[W]here a plain or literal reading of a statute produces absurd results, the literal reading should yield: 'It is a familiar rule, that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit, nor within the intention of its makers.  ***  If a literal construction of the words of a statute be absurd, the act must be so construed as to avoid the absurdity.' " *People v. Hanna*, 207 Ill. 2d 486, 498 (2003) (quoting *Church of the Holy Trinity v. United States*, 143 U.S. 457, 459-60 (1892)).

As such, we decline to revisit our determination in *Wallace*.

¶ 27    Having determined that the defendant's petition was untimely, we must next determine if the late filing is excused, *i.e.*, if the delay was not due to the defendant's culpable negligence. An untimely petition will not be dismissed if the defendant can prove that his delay in filing was

not due to his culpable negligence. 725 ILCS 5/122-1(c) (West 2008). Culpable negligence has been defined as unintentional yet negligent conduct that involves a disregard of consequences that are likely to result from a person's actions. *Boclair*, 202 Ill. 2d at 106. Further, culpable negligence is akin to recklessness and requires something more than ordinary negligence. *Id.* Nonetheless, all citizens are presumed to know the law and it was the defendant's obligation to know the Act's time requirements. *People v. Lander*, 215 Ill. 2d 577, 588-89 (2005). It is well settled that a defendant's unfamiliarity with those requirements does not demonstrate a lack of culpable negligence. *People v. Hampton*, 349 Ill. App. 3d 824, 829 (2004). A trial court's findings of fact regarding a defendant's culpable negligence will not be reversed unless manifestly erroneous, but the trial court's ultimate conclusion as to whether the established facts demonstrate culpable negligence is reviewed *de novo*. *People v. Ramirez*, 361 Ill. App. 3d 450, 452 (2005).

¶ 28 The defendant argued in his *pro se* postconviction petition and in his motion for late filing that the delay was not due to his culpable negligence. Specifically, the defendant stated in the petition and the motion that, in January 2008, he approached a prisoner who was a paralegal and asked for help on his case. The defendant alleged that the delay between that time and the time the petition was filed was due to difficulty accessing his record and to prison lockdowns. At the second stage of postconviction proceedings, these statements must be taken as true. See *Pendleton*, 223 Ill. 2d at 473. Further, the defendant's testimony at the June 8, 2011, hearing corroborated these statements. Nonetheless, as we have determined above, the defendant's petition was due in December 2007. Accordingly, any record difficulty or prison lockdowns after January 2008 cannot explain the lateness of the petition or provide a basis for a finding of lack of culpable negligence. See *People v. Croft*, 2013 IL App (1st) 121473, ¶ 13 (fact that prison staff confiscated the defendant's documents in April 1998 could not provide basis for lack

of culpable negligence, because his postconviction petition was due prior to that date). Accordingly, the defendant has failed to establish that the late filing was not due to his culpable negligence.

¶ 29    In sum, we conclude that the defendant has failed to establish a lack of culpable negligence for the late filing of his postconviction petition.  On that basis, we affirm the trial court's second-stage dismissal of the defendant's petition for postconviction relief.  Having so found, we need not address the defendant's contention that, with respect to the merits of his claims, there are factual disputes that require an evidentiary hearing.

¶ 30    The defendant's final contention on appeal is that postconviction counsel did not satisfy the requirements of Rule 651(c).  We note that under Rule 651(c) counsel is required to amend an untimely *pro se* postconviction petition to allege any available facts that may establish the petitioner's lack of culpable negligence for the delay in filing.  *People v. Perkins*, 229 Ill. 2d 34, 52-53 (2007).  However, the defendant does not argue that postconviction counsel violated Rule 651(c) with respect to this responsibility.  Rather, the defendant's arguments as to Rule 651(c) are related to the merits of his postconviction claims.  As we have affirmed the dismissal of his petition as untimely, we also need not address this contention.

¶ 31                                    CONCLUSION

¶ 32    For the foregoing reasons, the judgment of the circuit court of Winnebago County is affirmed.

¶ 33    Affirmed.