NOTICE
Decision filed 08/14/20. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2020 IL App (5th) 170048-U

NO. 5-17-0048

IN THE

NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jackson County. |
| | ) | |
| v. | ) | No. 14-CF-350 |
| | ) | |
| OSIKENOYA USMAN-ALIU, | ) | Honorable |
| | ) | William G. Schwartz, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BARBERIS delivered the judgment of the court.
Justices Overstreet and Boie concurred in the judgment.

**ORDER**

¶ 1    *Held*: Where the defendant's postconviction petition had no arguable basis either in law or in fact, the circuit court did not err in summarily dismissing it, and since any argument to the contrary would lack merit, the defendant's court-appointed attorney on appeal is granted leave to withdraw and the judgment of the circuit court is affirmed.

¶ 2    The defendant, Osikenoya Usman-Aliu, appeals from the summary dismissal of her *pro se* petition for postconviction relief. In this appeal, the defendant is represented by court-appointed counsel, the Office of the State Appellate Defender (OSAD). However, OSAD has concluded that this appeal lacks merit. On that basis, OSAD has filed with this court a motion for leave to withdraw as counsel, along with a memorandum of law in

1

support of the motion. See *Pennsylvania v. Finley*, 481 U.S. 551 (1987). OSAD provided the defendant with a copy of its *Finley* motion and memorandum. This court provided the defendant with ample opportunity to file a brief, memorandum, etc., responding to OSAD's motion and explaining why her appeal has merit, but the defendant has not taken advantage of that opportunity. This court has examined OSAD's motion and memorandum and the entire record on appeal, and has concluded that this appeal does indeed lack merit. Accordingly, OSAD is granted leave to withdraw as counsel, and the judgment of the circuit court is affirmed.

¶ 3                                         BACKGROUND

¶ 4      In 2014, the State filed an information charging the defendant with two counts of financial institution fraud (720 ILCS 5/17-10.6(h)(1), (g)(1) (West 2012)), one count of identity theft (720 ILCS 5/16-30(a)(4) (West 2012)), and one count of altering or counterfeiting credit or debit cards (720 ILCS 5/17-41(a)(ii) (West 2012)). In that same information, the State charged three codefendants with the same or related offenses. The circuit court appointed counsel for the defendant.

¶ 5      On November 13, 2014, the defendant, her appointed counsel, and an assistant state's attorney appeared before the circuit court. The parties informed the court that they had reached a plea agreement whereby the defendant would plead guilty to a single count of financial institution fraud (720 ILCS 5/17-10.6(h)(1) (West 2012)) and all of the other counts against her would be dismissed. (There was no agreement as to sentencing.) The court admonished the defendant as to the nature of the charge to which she was pleading guilty and the possible penalties, including imprisonment and mandatory supervised

2

release, and the defendant indicated her understanding. Twice, the defendant indicated that she wished to plead guilty. She acknowledged signing a written plea of guilty and indicated that she understood the written plea and did not have any questions about it. The State recited a lengthy factual basis for the plea. The factual basis portrayed the defendant as a key player in a scheme that involved purchasing stolen financial information, manufacturing fraudulent credit cards, and using those cards in order to effect fraudulent financial transactions, including purchases and cash advances. Pursuant to the parties' agreement, the defendant pleaded guilty to one count of financial institution fraud and the other charges against her were dismissed. A sentencing hearing was scheduled.

¶ 6    On January 2, 2015, the court held a sentencing hearing. The presentence investigation report showed that the defendant did not have any prior convictions. Neither party presented evidence. In her statement in allocution, the defendant apologized for her "actions" and "poor decisions." The court commented that the defendant was "actively engaged" in a financial-fraud enterprise, and the court sentenced her to imprisonment for eight years, to be followed by mandatory supervised release for two years.

¶ 7    The defendant filed a timely *pro se* motion to reduce sentence. (She did not file a motion to withdraw her guilty plea.) In the motion, the defendant claimed that her sentence should be reduced because she "had the least [involvement]," had "never been in any trouble before," and wanted to return to college instead of spending years in prison. In May 2015, the circuit court denied the motion to reduce sentence. In June 2016, this court vacated the order denying the defendant's motion to reduce sentence and remanded the cause for further postjudgment proceedings. *People v. Usman-Aliu*, No. 5-15-0190 (2016)

3

(unpublished summary order under Illinois Supreme Court Rule 23(c)). On remand, in October 2016, the circuit court again denied the *pro se* motion to reduce sentence. In March 2017, this court vacated the denial order and remanded the cause for further postjudgment proceedings, including the filing of a new motion to reduce sentence, if desired. *People v. Usman-Aliu*, No. 5-16-0477 (2017) (unpublished summary order under Illinois Supreme Court Rule 23(c)). According to the docket sheets, in May 2017, the defendant filed a new motion to reduce sentence, and the circuit court denied the motion. No appeal was taken from that denial order.

¶ 8 On December 16, 2016, while the above-referenced appeal in *People v. Usman-Aliu*, No. 5-16-0477, was pending, the defendant placed into the prison mail system a *pro se* petition for postconviction relief. The *pro se* postconviction petition was file-stamped by the clerk of the circuit court on December 27, 2016. In the petition, the defendant presented three claims of ineffective assistance of plea counsel, five claims of illegal search and seizure, and two claims relating to sentencing.

¶ 9 The three postconviction claims of ineffective assistance of plea counsel were as follows: (1) "the errors of counsel did affect the sentencing proceeding and outcome"; (2) plea counsel "failed to challenge search warrants by failing to file motions to suppress evidence," and this failure "obviously would have changed the trial and its proceedings"; and (3) the defendant "act[ed] on the advice of her counsel" in pleading guilty, but she entered the plea "after the fact had been misconstrued to her by counsel," resulting in "misrepresentation by her counsel." (Contrary to the defendant's assertion in the claim

4

concerning unfiled motions to suppress, no trial was held in this case; the defendant pleaded guilty, as described *supra*.)

¶ 10 The five postconviction claims of illegal search and seizure were as follows: (1) on or about July 8, 2014, the police "illegally seized" a phone belonging to the defendant and a phone belonging to another person, Lama Witt, under a mistaken belief that the latter phone belonged to codefendant Emmanuel Dosunmu, and "evidence found on those phones was later used in court"; (2) on August 7, 2014, Carbondale police entered "with no warrant" an apartment on South University Avenue in Carbondale, where the defendant and a woman named Alexis Blakely resided, and they "seized" Blakely's phone, even though Blakely "was NOT a part of the alleged warrant"; (3) the defendant received mail from a Carbondale police detective in regard to a search warrant dated August 13, 2014, "with the warrant being executed on August 9, 2014"; (4) on August 22, 2014, which was the day after the defendant was arrested, the police searched "the second apartment of [the defendant]" and "[t]here was no search warrant present but officers left a list of items seized"; and (5) at the time of the defendant's arrest on August 21, 2014, the defendant's phone was searched.

¶ 11 The two postconviction claims relating to sentencing were as follows: (1) "the errors of counsel did affect the sentencing proceeding and outcome" and (2) the defendant's eight-year prison sentence was much harsher than the probation sentence imposed upon one of her codefendants, Alexis Blakely, who "was charged with identity theft and received probation because she also did not have a criminal background." For postconviction relief, the defendant requested a sentence reduction.

5

¶ 12    On January 24, 2017, the circuit court entered a written order finding that the defendant's *pro se* postconviction petition was frivolous and patently without merit and summarily dismissing the petition.

¶ 13                                    ANALYSIS

¶ 14    As previously noted, the defendant's court-appointed attorney for this appeal, OSAD, has concluded that this appeal lacks merit and has filed a *Finley* motion to withdraw as counsel, along with a memorandum of law in support of the motion. This court agrees that this appeal lacks merit. The circuit court did not err in summarily dismissing the defendant's postconviction petition.

¶ 15    The Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2016)) provides a mechanism by which a criminal defendant may collaterally attack her conviction based on a substantial denial of her constitutional rights during the proceedings that resulted in the conviction. 725 ILCS 5/122-1(a)(1) (West 2016). A defendant commences a postconviction proceeding by filing a petition for postconviction relief with the circuit court. 725 ILCS 5/122-1(b) (West 2016). A postconviction petition generally must be accompanied by affidavits, records, or other evidence that supports the petition's allegations. 725 ILCS 5/122-2 (West 2016). "[W]hile a *pro se* [postconviction] petition is not expected to set forth a complete and detailed factual recitation, it must set forth some facts which can be corroborated and are objective in nature or contain some explanation as to why those facts are absent." *People v. Delton*, 227 Ill. 2d 247, 254-55 (2008). Upon the filing of a postconviction petition, the circuit court must determine whether the petition is frivolous or patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2016). Factual

allegations in the petition and accompanying affidavits must be taken as true, so long as they are not positively rebutted by the record. *People v. Bethel*, 2012 IL App (5th) 100330, ¶ 10. If the court finds that the petition is frivolous or patently without merit, the court must dismiss it. 725 ILCS 5/122-2.1(a)(2) (West 2016). A postconviction petition is frivolous or patently without merit if it has no arguable basis either in law or in fact. *People v. Hodges*, 234 Ill. 2d 1, 11-12 (2009). This court reviews *de novo* the dismissal of a postconviction petition. *People v. Coleman*, 183 Ill. 2d 366, 388-89 (1998).

¶ 16 In the procedural history of this case, the salient event is the entry of the defendant's guilty plea. On November 13, 2014, the defendant appeared in the circuit court and pleaded guilty to one count of financial institution fraud, in exchange for the dismissal of the other counts against her. By pleading guilty, the defendant severely limited the claims that she could raise thereafter, including in this postconviction proceeding, as explained below.

¶ 17 A valid plea of guilty waives all nonjurisdictional errors—even errors of constitutional magnitude—that were committed prior to the guilty plea. *People v. Townsell*, 209 Ill. 2d 543, 545 (2004). Therefore, once a defendant has pleaded guilty in open court, she may not raise claims of constitutional violations that allegedly occurred prior to the guilty plea; she may attack only the intelligent and voluntary character of her plea. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973); see also *People v. Ivy*, 313 Ill. App. 3d 1011, 1017 (2000) (three of postconviction petitioner's claims, all alleging ineffective assistance of plea counsel, were barred as they concerned constitutional deprivations that "occurred prior to the entry of defendant's guilty plea"); *People v. Kempfer*, 194 Ill. App.

7

3d 521, 527 (1990) (by pleading guilty, the defendant "waived all questions other than the voluntary and intelligent character of the plea").

¶ 18 Where a defendant who pleaded guilty upon the advice of her counsel challenges the intelligent and voluntary character of her guilty plea, she must show both (1) that the advice she received from counsel was outside the range of competence demanded of attorneys in criminal cases and (2) that there is a reasonable probability that, but for counsel's errors, she would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). In short, the two-pronged test of *Strickland v. Washington*, 466 U.S. 668 (1984), applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill*, 474 U.S. at 58; see also *People v. Hall*, 217 Ill. 2d 324, 334-35 (2005) (noting that the *Strickland* standard applies to such challenges). When determining whether a defendant has shown that counsel made an unprofessional error, a court must "indulge a strong presumption" that counsel's performance fell within "the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

¶ 19 In her postconviction petition, the defendant did not challenge the intelligent and voluntary character of her guilty plea. As OSAD notes in the memorandum accompanying its *Finley* motion, the defendant nowhere alleged that her guilty plea was unintelligent or involuntary. Thus, the defendant failed to present the one claim that would be expected in this case, given its procedural history. (Meanwhile, nothing in the transcript of the guilty-plea hearing suggests that the plea was unintelligent or involuntary.) The closest the defendant came to challenging the intelligent and voluntary character of her guilty plea was her claim that she pleaded guilty "after the fact had been misconstrued to her by counsel,"

8

resulting in "misrepresentation by her counsel." Mistaken advice by plea counsel can render a guilty plea unintelligent or involuntary. See, *e.g.*, *People v. Rissley*, 206 Ill. 2d 403, 457-60 (2003). Here, however, the defendant did not offer any hint as to what "fact" her attorney had "misconstrued to her" or how the unspecified misconstruction had prejudiced her. That is, she did not describe the mistaken advice provided by plea counsel or how it harmed her. She merely suggested that counsel had provided mistaken advice. Nonspecific and nonfactual assertions amounting to nothing more than conclusions are insufficient to allow a postconviction petition to avoid summary dismissal. *People v. Torres*, 228 Ill. 2d 382, 394 (2008).

¶ 20 Many of the claims presented in the defendant's postconviction petition concerned police searches, while another claim concerned plea counsel's failure to file motions to suppress evidence seized during those searches. All of those claims are barred because they all concern constitutional violations that allegedly occurred prior to the entry of the guilty plea. See *Tollett*, 411 U.S. at 267; *Ivy*, 313 Ill. App. 3d at 1017; *Kempfer*, 194 Ill. App. 3d at 527. Also, the claims themselves are extremely weak. As OSAD points out, these claims fail to provide any information about the evidence seized or how the evidence might have been used against the defendant at a trial; they fail to offer any reason to think that a suppression motion might have been successful; and they fail to explain, or even to hint at, how counsel's failure to file suppression motions led to the defendant's decision to plead guilty.

¶ 21 Finally, this court addresses the defendant's two postconviction claims relating to sentencing. The first such claim was that "the errors of counsel did affect the sentencing

proceeding and outcome." This claim consisted of nothing more than this short, bald assertion. The defendant did not specify any sentencing-related error committed by counsel or explain how the error prejudiced her, and she did not allege any fact in support of the claim. She offered only a broad conclusory allegation of ineffective assistance of counsel, and "a broad conclusory allegation of ineffective assistance of counsel" is "not allowed" under the Post-Conviction Hearing Act. *Delton*, 227 Ill. 2d at 258.

¶ 22 The defendant's second claim relating to sentencing is a claim of sentencing disparity. To state a claim of sentencing disparity, a postconviction petitioner must allege facts in support of that claim. *People v. Caballero*, 179 Ill. 2d 205, 216 (1997). Here, the defendant provided almost no facts relevant to the alleged disparity between her own sentence and Blakely's sentence. The defendant merely stated that "Alexis Blakely was charged with identity theft and received probation because she also did not have a criminal background." The record on appeal does not include any information about Blakely's character or rehabilitative potential, factors that would be relevant to a determination of her sentence. Meanwhile, the factual basis presented at the defendant's guilty-plea hearing gives the strong impression that the defendant was heavily involved in the financial-fraud enterprise at issue in this case, while Blakely was a tangential player. For example, the factual basis indicated that the defendant "visit[ed] black market websites and purchas[ed] stolen account data" and obtained, or attempted to obtain, cash advances from banks through the use of fraudulent credit cards that had her name embossed on them. Meanwhile, Blakely merely received stolen account data from the defendant and used the account numbers in order to purchase food and train tickets. In addition, the transcript of

10

the defendant's sentencing hearing makes clear that the judge in this case was very familiar with the financial-fraud enterprise at issue in this case, and the judge viewed the defendant as someone who was involved in the enterprise "right up to [her] eyebrows." The defendant failed to state a postconviction claim of sentencing disparity.

¶ 23                                    CONCLUSION

¶ 24    As explained in detail above, the defendant's *pro se* postconviction petition had no arguable basis either in law or in fact. The circuit court had no real choice but to summarily dismiss the petition. Any argument to the contrary would lack merit. Accordingly, OSAD's *Finley* motion to withdraw as counsel is granted, and the judgment of the circuit court is affirmed.

¶ 25    Motion granted; judgment affirmed.